Kenneth Alvis PIERCE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-13326.

Court of Criminal Appeals of Oklahoma.

June 5, 1963.

Rehearing Denied July 17, 1963.

Second Rehearing Denied Aug. 5, 1963.

Valdhe F. Pitman and Malcolm M. Baucum, Oklahoma City, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Jack A. Swidensky, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Kenneth Alvis Pierce, hereinafter referred to as the defendant, was charged by Information in the District Court of Oklahoma County with Burglary Second Degree After Former Conviction of a Felony. He was tried before a jury, found guilty, and sentenced to 10 years in the Oklahoma State Penitentiary. He lodged his appeal in this Court in due time, asserting four assignments of error.

The first contention of defendant alleges mis-conduct on the part of the trial judge in his remarks directed to or about counsel while passing on their objection.

The Court has thoroughly examined the record and especially the remarks to which counsel calls our attention, and fail to find where such remarks were prejudicial to the extent of causing reversal. It appears from the record that defense counsel made many frivolous objections, in fact, there were some 60 objections made on the direct examination of the first two witnesses, and the Judge apparently was very patient in most instances. The Attorney General calls attention to the fact that there were 15 Motions made for a mis-trial, as reflected in the case-made—11 of them within 39 pages of the testimony.

■ There were some unnecesssary remarks made by both the defense counsel and the trial judge, and it is obvious they were prompted by a multiplicity of objections and motions for mistrial by defense counsel; but in the light of the entire record they will not be deemed cause for reversal.

■ We reiterate our affirmance in the rule that "A trial court should proceed with dignity, rule with impartiality, and say as little as possible in the trial of a criminal case."

We, at the same time, adhere to the rule adapted in Jones v. State, 20 Okl.Cr. 154, 201 P. 664:

"The trial court should refrain from making disparaging personal remarks concerning any of the attorneys engaged in the trial. The attorneys, on the other hand, should refrain from unnecessarily irritating the court. A trial in a court of justice should not be permitted to degenerate into a contest of wits or skill between the court and attorneys, or between the attorneys themselves. Held, in this case, that the attorneys for defendant were in some measure responsible for the disparaging remarks of the court, and that the remarks so made, under all the circumstances, were not prejudicial."

■■ Defendant next contends that the trial court committed error in giving an instruction to the jury concerning the punishment. It is to be noted that the defendant was prosecuted as a Second Offender, and under the rule adapted in the Harris case, Harris v. State, Okl.Cr., 369 P.2d 187, the Information is to be drawn in two parts. The first offense is to be heard and the jury instructed to arrive at a verdict as to only the guilt or innocence of the defendant. In the event they find him guilty, then a hearing is held on the previous offense in order that they can arrive at a punishment within the Statute. The second and subsequent Statute provides for enhanced punishment when the jury finds the defendant guilty of both offenses. The punishment for Burglary in the Second Degree is fixed by Statute as not to exceed seven years or not less than two years; while the second offense Statute provides a minimum of ten years. When the State had concluded its case on the first offense, the trial court gave the following instruction:

"No. 3. The Statutes of this State provide:

"Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection in which any property is kept with intent to steal therein

or to commit any felony is guilty of burglary in the second degree.

"The 'breaking and entering' necessary to constitute burglary may be any act of physical force, however slight, by which the obstruction to entering is forcibly removed, and the opening of a closed door in order to enter a room of a building may constitute a 'breaking'. "Burglary in the Second Degree is punishable by imprisonment in the State Penitentiary not to exceed seven years, or not less than two years."

This was an erroneous and premature Instruction as the jury at that stage of the trial was only concerned with the guilt or innocence of the defendant and not the punishment. However, there were no objections or exceptions taken until after the jury had rendered their verdict. It was after a verdict of guilty had been rendered before it was called to the trial court's attention. The record indicates that there was some conversation between defense counsel and the trial judge that they had agreed to save exceptions to the Instructions after the verdict. This procedure serves no good purpose as the trial judge should be given an opportunity to correct erroneous instructions before they are submitted to the jury. It should be called to his attention before submission to the jury, therefore averting the defendant from "laying behind a log" with a contention of error.

■■ This court said in the case of Russell v. State, 17 Okl.Cr. 164, 194 P. 242 (Sy. 3):

"The trial court is without power to make a rule of court which permits counsel on either side to save an exception to an instruction after the verdict of the jury has been returned in a criminal case. It is essential to the validity of a court rule that it must not contravene any constitutional or statutory provision on the same subject."

■ The proper procedure is outlined in a very early decision of this Court, Boutcher v. State, 4 Okl.Cr. 585, 112 P.

762, in an interpretation of the Statute pertaining to instructions (Fifth Subdivision of Sec. 5870, Revised Laws of 1910, relative to Criminal Procedure), the Court said:

"When the evidence in a criminal case is concluded, the judge should give counsel for the state and counsel for the defendant an opportunity to submit any written instructions which they may desire to be given to the jury, and should also give counsel an opportunity to be heard either in support of or in opposition to instructions to be given to the jury, and the court should require counsel for the defendant, upon such hearing, to point out what objections, if any, they have to the instructions given to the jury, and these objections should be incorporated in the record."

In the body of the opinion it is said:

"This section clearly contemplates that instructions to juries in criminal cases should be settled before they are read to the jury, and that if counsel have any instructions which they desire to be given, or if they have any objections to any instructions proposed to be given by the court, it is the privilege and duty of counsel to point out such matters to the court before the instructions are read to the jury. Counsel for the defense have the right to be heard in the trial court upon the law as well as upon the facts. This is fair to all parties concerned, and is necessary to the proper administration of justice. It gives the judge an opportunity to correct any errors which he may have made, and it gives the county attorney an opportunity, if he thinks the charge of the court is erroneous, to join with the defendant in requesting that such error be corrected. If counsel desire to make objections to the instructions which the court proposes to give to the jury and request permission to do so, it would be error on the part of the trial court to refuse to give counsel such opportunity."

■ We are of the opinion that counsel for defense waived his right to assert error by failing to follow the above rule. It is noted that when the jury returned the second time to consider the punishment, the court informed the jury in the instruction the minimum and maximum for the primary offense and for a second offender, which properly stated the law.

■ Defendant next contends that it constituted error for the trial court to exclude testimony as to the modus operandi of a Mr. Bryant. No doubt the testimony was offered in an attempt to show Bryant committed the burglary and not the defendant, because the modus operandi (or m.o.) was evidently similar in a burglary previously committed by Bryant.

The Court cannot believe the defendant serious about this contention as it arose from the following:

"Q. Are you familar with this Pierce case, you said you were out there that night?

"A. Yes, sir.

"Q. Is the M.O. of Bryant the same or almost the same as the M.O. in this case?

"A. I did not investigate the burglary of which Pierce is accused of as far as entry of the building, and I really couldn't say because I don't know how he got into the building.

"Q. Well, if you made a police report of this case could you make a determination from that?

"A. Well—".

At this point, the County Attorney objected.

After much discussion, the objection was sustained by the trial judge and we think properly so, because the witness said he was not familiar with the method used in gaining entrance in the instant case. The judge said in connection with sustaining the objection:

"If you have got any evidence you can put it on the stand, but this officer said he doesn't know the M.O. in this case and it is pretty far-fetched. I never heard of it in court before * * *".

This Court does not feel at this time, that the admissability of M.O. evidence is properly before the Court to justify further discussion.

■ Defendant further argues that error was committed by the trial court in permitting the State to cross-examine Witness Keester. Defendant produced Witness Keester for the purpose of attempting to prove a relative of the defendant told him that the defendant did not commit the crime. Witness Keester testified:

"Q. Did you have a conversation with him Saturday night about 10:00 o'clock?

"A. Yes, sir.

"Q. Did you make this statement that you knew he was not guilty of this crime of burglary?

"A. No, sir.

"Q. Did you tell him you had received information that others had committed this burglary?

"A. No, sir, he told me.

"Q. You didn't tell him?

"A. No.

"Q. You didn't make that statement at all?

"A. No. If you would like me to repeat it I will do so.

"Q. You made no statement?

"A. I didn't say he was not guilty.

"Q. Let me ask you this: Do you have information or names of people who did commit that burglary?

"A. Yes, sir.

"Q. State who you have reference to?

"MR. THOMAS: I object unless the proper predicate is laid. We don't know anything about it.

"THE COURT: I think under the circumstances, we might excuse the jury, Ladies and Gentlemen, you may be ex-

cused for a time; remember the admonitions heretofore given you."

After the jury was excused, the witness was examined at great length. He testified outside the presence of the jury that Leon Pierce told him that someone else committed the crime. That Leon Pierce was a brother, nephew, or cousin of the defendant, he didn't know which. The trial judge held this testimony inadmissable, and rightly so.

■ The County Attorney asked that he be permitted to cross-examine the witness in the jury's presence as to where he got the information. In view of the fact that before the jury was excused, the witness said he had information that someone other than the defendant had committed the crime. We see nothing improper in this, as defendant first brought it to the attention of the jury and the State was certainly entitled to show where he got the information, even though the judge later ordered the entire testimony stricken. This Court held in the case of Griffin v. State, 46 Okl.Cr. 146, p. 149; 287 P. 820, p. 821:

> "This court has repeatedly held that an appellant will not be permitted to profit by an alleged error which he or his counsel in the first instance invited by opening the question or by their own conduct. * * * Counsel for defendant invited whatever error was occasioned by the admission of this alleged incompetent evidence and cannot profit by the same."

■ Defendant argues that during the cross-examination by the County Attorney, improper and prejudicial questions were asked which would have justified the trial court in sustaining a motion for mis-trial. The objection as to this point was raised by defendant during the cross-examination when the county attorney asked the witness Keester if the defendant was *under arrest* when they had the conversation. Before the witness had an opportunity to answer, the defendant objected and moved for a mis-trial. The trial judge promptly sustained the objection and overruled the mo-

tion for mis-trial. The answer to the question was never received by the jury, consequently, we cannot see where the defendant was prejudiced to the extent of requiring reversal.

■ In the instant case, we subscribe to the Attorney General's reasoning. There were some violations of technical rules which is true in most all closely contested cases. It does not necessarily follow that a conviction must be reversed upon claim of technical errors. It is well established that the Court should not reverse a conviction unless it has reason to believe from an inspection of the entire record that the appellant has been deprived of some substantial right resulting in his injury during the trial.

■ No reasonable jury could have done other than return a verdict of guilty. The defendant presented no valid defense.

We find no errors in the record which justify reversal. The judgment and sentence is therefore affirmed.

BUSSEY, P. J., and JOHNSON, J., concur.