THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DARNELL WORSHAM, Defendant-Appellant.

(No. 59423;

First District (3rd Division)—February 20, 1975.

James J. Doherty, Public Defender, of Chicago (William Krahl, Thomas F. Finegan, Ronald P. Alwin, and Shelvin Singer, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Richard Robinson, Patrick T. Driscoll, Jr., Jerome Charles Randolph, and James B. Davidson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant Darnell Worsham was indicted for armed robbery and aggravated battery. A jury acquitted him of the robbery charge but convicted him of aggravated battery. He was sentenced to serve from 1 to 3 years in the penitentiary.

This appeal raises two issues: whether the verdict on the charge of aggravated battery was sufficient at law to support the entry of a judgment of guilty, and whether the court erred in not instructing the jury that an essential element of battery is that the offense must be without legal justification.

On the morning of June 8, 1972, Worsham confronted Frederick Stone, a civilian-attired Chicago policeman, on a sidewalk near the intersection of State and Harrison Streets, Chicago. The officer, assigned to the Chicago Transit Authority as a decoy, was on his way to the Harrison Street subway station to meet his partners. According to Stone's testimony, Worsham blocked his path and begged first a quarter, then a dollar from him, and finally showed him an opened pocketknife and demanded that he hand over his wallet. This the officer did. Worsham returned the knife to his pocket, whereupon Stone produced his badge, drew his revolver, kept it pointed to the ground, and told Worsham that he was under arrest. Worsham dropped the wallet and began to walk away. When he attempted to restrain Worsham, the defendant struck him on the side of his face, knocked him to the ground and caused his revolver to discharge. The two men fought, and Worsham managed to escape. Stone chased him

down the street, and he was apprehended a short distance away by two other policemen.

Worsham testified that it was Stone who attempted to beg money from him and, when he tried to walk away, Stone struck him in the eye and then told him he was under arrest. Worsham said that, not knowing Stone's identity, he pushed the officer aside, and the fight ensued. Contrary to the testimony of other eyewitnesses, Worsham claimed that it was he who called for police assistance during the struggle.

Two civilian witnesses, Melvin Codwell and James Grapsas, saw at least part of the altercation. Neither one saw Stone produce identification, but both agreed that during the struggle he stated he was a policeman and it was he who called for police assistance. Codwell watched the confrontation from its inception; standing 25 feet away from Stone and Worsham, he did not hear their initial conversation, but did see Stone hand his wallet to Worsham, who dropped it a moment later. Codwell then heard Stone say, "Pick it up, you're under arrest."

The jury was instructed that to sustain the charge of aggravated battery it would have to find that the defendant knowingly or intentionally caused bodily harm to the officer and that he knew that Stone was a peace officer engaged in the execution of an official duty. IPI—Criminal No. 11.10.

The verdict of guilty, signed by all 12 jurors, stated, "We, the jury, find the defendant guilty of aggravated battery." Appended to it on a second sheet of paper was a note signed by five jurors, which read, "The aggravated battery may have been provoked by Officer Stone's behavior." The jury was polled and each of its members answered "yes" to the court's question: "Was this and is this your verdict?" The court, deciding that provocation was not at issue and that the intent to convict was clear, treated the note as surplusage and entered judgment on the verdict.

The defendant contends that the note, construed as a part of the verdict, renders the verdict ambiguous, contradictory and insufficient at law to support the judgment.

No authority has been cited to support the basic premise of this contention: that a note signed by some members of a jury, separate from a verdict but submitted with it, must necessarily be construed as part of the verdict. As a general rule, a liberal construction, with all reasonable intendments, will be indulged by a reviewing court to support the verdict. It will not be held insufficient unless, from necessity, a doubt as to its meaning obtains after a search of the record. (*People v. Pignatelli* (1950), 405 Ill. 302, 90 N.E.2d 761.) The record before us does not command the conclusion that the jurors' note was tendered as a part of, or a dissent

from, the verdict. Unlike the unanimous verdict, it was signed by only five jurors. When the court conducted its poll, all 12 jurors upheld the guilty verdict as their own.

██ Even if the separate communication could be construed to be part of the verdict, it was proper for the court to disregard its content. That portion of a verdict which lies beyond the legitimate province of the jury may be treated as surplusage where to do so will still leave a complete and valid verdict. (*People v. McCurrie* (1929), 337 Ill. 290, 169 N.E. 214.) If the message was meant to draw attention to a mitigating circumstance the recommendation of leniency would have no legal significance (*People v. Jensen* (1960), 24 Ill.App.2d 302, 164 N.E.2d 228), and this would have been true even if it had been incorporated in the text of the signed verdict. (*People v. Manning* (1943), 320 Ill.App. 143, 50 N.E.2d 118.) Similarly, where an otherwise sufficient verdict includes an unnecessary finding concerning an immaterial issue, that finding will be disregarded. (*People v. Coleman* (1911), 251 Ill. 497, 96 N.E. 239; *People v. Mulford* (1943), 385 Ill. 48, 52 N.E.2d 149.) Since no issue of provocation was submitted to the jury, the opinion of the five jurors did not touch upon a matter pertinent to the question of Worsham's guilt. The defendant suggests that the note may represent an inartfully phrased finding that Worsham acted in self-defense. But that issue was no more before the jury than was the one of provocation. No instructions on self-defense were tendered by either the defendant or the State, and none were given to the jury.

The defendant's second contention is that plain error occurred when, in the absence of a pertinent instruction from the defendant or the State, the court did not on its own motion instruct the jury that to sustain the charge of aggravated battery, the State had to prove that the offense was committed without lawful justification.

██ It is the State's duty to prove the essential elements of a charged crime, and these elements must be made known to the jury. (*People v. Hussey* (1972), 3 Ill.App.3d 955, 279 N.E.2d 732, *affirmed sub nom. People v. Harvey* (1973), 53 Ill.2d 585, 294 N.E.2d 269.) Although, generally, a trial court is under no duty to give instructions not asked for by either party (*People v. Lindsay* (1952), 412 Ill. 472, 107 N.E.2d 614), it has the responsibility of seeing that the jury is informed of the elements of the crime and its failure to do so may be noticeable as plain error. (*People v. Davis* (1966), 74 Ill.App.2d 450, 221 N.E.2d 63.) On the other hand, it is the defendant's burden to tender instructions "* * * which necessarily bear favorably upon some phase or theory of defense (*e.g.*, presumption of innocence, burden of proof, self-defense) * * *." *People v. Davis* (1966), 74 Ill.App.2d 450, 454.

■■ The defendant argues that the lack of legal justification is a necessary element of the crime of battery. Section 12—3 of the Criminal Code defines the offense as follows:

"A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual * * *." (Ill. Rev. Stat. 1971, ch. 38, par. 12—3.)

However, in the case of *People v. Hussey* (1972), 3 Ill.App.3d 955, 957, the phrase "without legal justification" was declared unnecessary for the purpose of determining the sufficiency of the charge in an indictment. The court reasoned that the idea expressed in the phrase,

"* * * being a negative, is not one of the 'essential elements'. An excess of caution may have occasioned its inclusion * * * and while we appreciate the reasons for its cautionary inclusion, it is, in our opinion, still not an integral or material part of the definition. Rather, it is elucidatory—an attempt to clearly express the idea that while certain types of battery may take place, * * * it would not be a crime if certain affirmative defenses * * * exist." See also *People v. White* (1972), 7 Ill.App.2d 1084, 288 N.E.2d 705.

In jury instructions, as in an indictment, the phrase is unnecessary to a complete definition of battery. (*People v. Brown* (1973), 11 Ill.App.3d 67, 296 N.E.2d 77.) It is omitted from the relevant Illinois Pattern Jury Instructions (IPI-Criminal Nos. 11.09, 11.10), and the omission is a sensible one. Its inclusion alone could not sufficiently apprise a jury of the law regarding any particular defense of justification, if one is raised. Conversely, if no such defense is raised, an unfocused general reference to legal justification in the instructions could only confuse the jurors.

■■ The defendant maintains that his ground of exculpation was obvious: that the sole issue raised by him at the trial was that he acted in self-defense. We have searched the record in vain for mention of "self-defense" or words of similar meaning in counsel's arguments to the court or jury or, for that matter in the defendant's testimony. Nowhere do they appear. Defenses of justification, such as self-defense, are affirmative defenses. (Ill. Rev. Stat. 1971, ch. 38, par. 7—14.) A defendant is obligated to present some evidence of such a defense in order to raise the issue. (Ill. Rev. Stat. 1971, ch. 38, par. 3—2.) However, it is not enough merely to introduce relevant evidence. If a defendant does not articulate his theory in argument and fails to tender jury instructions identifying it, he cannot reasonably complain on appeal if the trial court, unaided, fails to divine his intent. The failure to offer or request an instruction on an affirmative defense constitutes a waiver of the issue. (*People v. Pulley*

(1973), 11 Ill.App.3d 292, 296 N.E.2d 373; *People v. Browry* (1972), 8 Ill.App.3d 599, 290 N.E.2d 650; *People v. Porterfield* (1971), 131 Ill.App.2d 167, 268 N.E.2d 537.) By his silence the defendant waived the right to complain on appeal that the jury instructions did not define self-defense, and by his failure to suggest this or some other defense of justification, the noninclusion of the words "without lawful justification" in the instructions of the court was not improper.

The judgment is affirmed.

Affirmed.

McNAMARA and MEJDA, JJ., concur.