**Otis KINSEY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–86–300.**

Court of Criminal Appeals of Oklahoma.

Sept. 17, 1990.

As Corrected Sept. 24, 1990.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Judge:

Appellant Otis Kinsey was tried by a jury and convicted of Receiving Stolen Property, (21 O.S.Supp.1984, § 1713), in Oklahoma County District Court, Case No. CRF–85–2126. The jury set punishment at a $500.00 fine. Judgment and sentence was imposed accordingly.

On the evening of March 4, 1985, David McGraw and Sammy Sykes, both employees of Big Giant Warehouse, a grocery store in Oklahoma City, delivered a large quantity of groceries and two paint pots to Appellant's residence in Oklahoma City, without the knowledge or consent of the store's owner or manager. Upon delivery, Appellant requested that some of the groceries, along with the two paint pots and a spray gun, be delivered to the home of Appellant's nephew in Choctaw, Oklahoma. Sometime later, David McGraw picked up the paint pots from the home of Appellant's nephew, Mark Gregory, and threw them in the river. Subsequently, Appellant paid David McGraw $800.00 cash for the groceries. Sammy Sykes and Jerry Tollison each received $200.00 which represented their split of the monies paid by Appellant to David McGraw. Prior to the evening of March 4, 1989, Appellant was seen talking with David McGraw at Big Giant Warehouse by Jerry Tollison and Sammy Sykes. However, neither Tollison nor Sykes overheard any of their conversation. Both Sammy Sykes and Jerry Tollison admitted to being involved in various thefts from the store, including the theft on March 4, 1985. Appellant, testifying on his own behalf, admitted running into David McGraw, an old friend, at Big Giant Warehouse one day when he was shopping. He testified that McGraw told him that as a store employee he received a 20–25% discount on groceries that he could pass on to Appellant. Subsequently, Appellant placed an $800.00 order with McGraw who offered to deliver the groceries, which were later delivered on

Robert T. Keel, Keel & Kulmacz, Oklahoma City, for appellant.

March 4, 1985, by Sykes and McGraw. Appellant admitted that he had never purchased groceries in this manner in the past.

■ In his first assignment of error, Appellant contends that the presumption of his innocence was effectively ignored, thereby depriving him of due process of law. Specifically, he alleges that jury Instruction No. 5 was arbitrary and contained an unconstitutional rebuttable presumption. The complained of Instruction No. 5 reads as follows:

> No person may be convicted of receiving stolen property unless the State has proven beyond a reasonable doubt each element of the crime. These elements are: (1) receiving; (2) embezzled personal property; (3) that defendant reasonably should have believed to have been embezzled; (4) with the intent to deprive permanently." (O.R. 11)

This Court has previously ruled a statutory presumption that a person in possession of stolen property knew it to be stolen is arbitrary, creates an unconstitutional presumption, and denies the defendant of due process when a jury is so instructed. *Payne v. State,* 435 P.2d 424 (Okl.Cr.1967). *Payne* is quite distinguishable from the instant case. In *Payne,* a statute-based instruction, then 21 O.S.Supp.1967, § 1713(2); now 21 O.S.Supp.1981, § 1713(2), was struck down for lack of a rational connection between the fact proven, possession, and the fact presumed, that the possessor knowingly possessed stolen property. The instruction in this case complies with the rule of law that the State is not required to prove an accused had actual knowledge that the property was stolen; it is sufficient to prove that an accused had reasonable cause to believe that the property was stolen. *Brooks v. State,* 714 P.2d 217 (Okl.Cr.1986); *Corley v. State,* 713 P.2d 12 (Okl.Cr.1985); *Gentry v. State,* 562 P.2d 1170 (Okl.Cr.1977). Instruction No. 4 clearly advised the jury Appellant was presumed to be innocent and that the State was required to prove guilt beyond a reasonable doubt. Instruction No. 5 merely advised the jury that before reaching a verdict, they had to consider, along with the other elements of the crime, whether or not the defendant should have believed the goods to have been embezzled. We are of the opinion that when Instruction No. 5 is read together with Instruction No. 4 and the other instructions, an unconstitutional presumption is not created. This assignment of error is denied.

■ In his second assignment of error, Appellant alleges that the trial court erred in failing to instruct on his theory of defense. Appellant argues his requested instruction read as follows:

> It is the theory of the Defendant that he neither knew nor had reason to believe the canned goods and other grocery items were stolen at the time he purchased the same, and that he was without criminal intent. (Appellant's Brief Pg. 10)

However, a review of the record reveals that Appellant's requested instructions were not listed in the designation of record or provided for review. Failure to provide a complete record for review waives all but fundamental error, we will now review the record for that purpose.

In support of his argument Appellant relies on *Hutton v. State,* 494 P.2d 1246 (Okl.Cr.1972), wherein this Court followed *Lester v. State,* 408 P.2d 563 (Okl.Cr.1965), in holding that a defendant is entitled as a matter of law to have his theory of defense clearly set forth in an instruction to the jury. In *Hutton* not only did the trial court reject defendant's requested instruction on his theory of defense but the trial court also failed to set forth or define the elements of the offense in the instructions as a whole. It is apparent, after reviewing the decisions of this Court relating to the totality of the instructions, that the reversible error in *Hutton* was the failure to define the elements of the offense.

This Court has consistently held that a defendant is entitled to an instruction on his theory of defense where there is evidence to support it, even if such evidence is discredited. *Broaddrick v. State,* 706 P.2d 534, 536 (Okl.Cr.1985). We have also held that it is not error to refuse to give an instruction on the defendant's theory of

defense if there is insufficient evidence to support it. *Smith v. State,* 568 P.2d 639 (Okl.Cr.1977); *Coulter v. State,* 721 P.2d 818 (Okl.Cr.1986). In addition, after considering the jury instructions as a whole, we determine if the totality of the instructions fairly and accurately state the applicable law. *Ashinsky v. State,* 780 P.2d 201 (Okl.Cr.1989), relying upon *Nunley v. State,* 660 P.2d 1052 (Okl.Cr.1983). Here, Instruction No. 5 set forth the elements of the crime, Instruction No. 4 set forth the presumption of innocence, Instruction No. 11 explained how the defendant's testimony was to be judged, and Instruction No. 1 advised the jury to consider the instructions as a whole.

 Appellant's requested instruction is basically his testimony that he did not know the items were stolen or embezzled. While a defendant does have the responsibility to come forward with an affirmative defense in some instances, denial of commission of the criminal act is not one of those defenses. In any criminal case the State has the burden of proof as to all elements of the offense, including knowledge and intent. As we held in *Payne,* this burden cannot be shifted to the defendant in a criminal case. That burden of proof remains with the State. Appellant's testimony in this case was merely evidence for consideration of the jury under Instructions No. 4 and No. 5, respectively. To warrant a separate instruction a defendant's theory of defense must be a legal defense recognized in the law i.e. statutes or case law. This rule is consistent with the holding in *Lester v. State,* 408 P.2d 563 (Okl.Cr.1965). Legal defenses are matters which go to the legal exoneration of guilt or evidence which may reduce the charge to a lesser included offense. Once presented, it is then the responsibility of the trial judge to determine if the evidence is sufficient to support the instruction. The defendant is then entitled to an instruction on any theory of defense supported by the evidence, as long as that theory is tenable as a matter of law. *Lee v. State,* 637 P.2d 879 (Okl.Cr.1981); See also *United States v. Hall,* 536 F.2d 313 (10th Cir.1976) It is well settled that this Court will not inter-

fere with a judgment as long as the instructions, when considered as a whole, fairly and accurately state the applicable law. *Coulter v. State,* 721 P.2d 818 (Okl. Cr.1986); *Langdell v. State,* 657 P.2d 162 (Okl.Cr.1982). After considering the instructions as a whole, we find that the failure of the trial court to specifically instruct on Appellant's denial of having knowledge that the items were stolen or embezzled is not error. Hence, this proposition is denied. To the extent this opinion further defines the rule of law relating to the instruction on a defendant's theory of defense, *Hutton v. State,* 494 P.2d 1246 (Okl.Cr.1972), is modified and distinguished. Further, the Court's decision in *Lester v. State,* 408 P.2d 563 (Okl.Cr.1965), is modified to include the explanation set forth herein.

 Appellant contends in his third proposition that the trial court should not have allowed the State to impeach its own witness based on out-of-court statements when that witness had not contradicted the previous statements at trial. Specifically, Appellant is referring to the testimony of the State's rebuttal witness, David McGraw. During the in-court examination of McGraw the prosecutor asked several questions concerning an out-of-court statement made by Mr. McGraw to the prosecutor. Specifically, Mr. McGraw was asked on rebuttal "if he had ever told Otis Kinsey those groceries were embezzled or stolen", to which McGraw replied "no", but when asked if he had ever given the District Attorney a different statement, the witness replied "yes". Appellant alleges the prosecutor knew McGraw's in-court answer would be inconsistent with his out-of-court statement and, therefore, it was error to allow the inquiry.

 The credibility of a witness may be attacked by any party, including the party calling him. Title 12 O.S.1981, § 2607. Further, rebuttal evidence may be offered to explain, repel, disprove, or contradict facts given in evidence by an adverse party, regardless of whether such evidence might have been introduced in the

State's case in chief or whether it is somewhat cumulative. E.g. *Salyers v. State*, 755 P.2d 97 (Okl.Cr.1988); *Smith v. State*, 695 P.2d 864, 868 (Okl.Cr.1985). Thus, a party may call a witness during the presentation of its case-in-chief solely for the purpose of securing the admission of the prior inconsistent statement under the guise of impeachment when it is really introduced for substantive purposes. *Smith v. State*, 766 P.2d 1007 (Okl.Cr.1988), (construing 21 O.S.1981, § 2607). However, our abolition of the surprise and prejudice requirements should not be considered as a "blanket approval" of all impeachment evidence; consideration must be given to the requirement of 12 O.S.1981, § 2403, by weighing the probative value of the statement against the danger of prejudice suffered by its admission into evidence. *See id.* at 1009.

Here the evidence that prior out-of-court statements were inconsistent with the in-court testimony of a witness was relevant to help prove Appellant's reasonable belief that the property received was stolen. This Court never intended to draw a distinction between case-in-chief and rebuttal for purposes of limiting Section 2607. Thus, we find that a witness called during any stage of the trial may be called solely for the purpose of securing the admission of prior inconsistent statements for impeachment purposes, provided close scrutiny is given the proffered evidence under the standards of Section 2403.

In his final proposition of error, Appellant alleges that the State's inquiry concerning arrangements for paying attorney fees was prejudicial to Appellant. Specifically, he refers to the in-court questioning of both the Appellant and McGraw by the prosecutor regarding McGraw's fee payment arrangement. However, before the parties could respond, in both instances, the question of privilege was raised by counsel for Appellant, and both Appellant and McGraw declined to answer the question except to say that some work was to be done on a barn belonging to the attorney. Whether or not the prosecutor was about to invade the province of attorney-client privilege need not be discussed here because the questioning was discontinued when the parties declined to answer.

While the prosecutor's conduct in attempting to elicit improper testimony on rebuttal was inappropriate, it is not error where the witness did not respond with testimony prejudicing the defendant. *Glass v. State*, 701 P.2d 765 (Okl.Cr.1985). The limited response of the Appellant and witness McGraw concerning payment of attorney fees was harmless and had no prejudicial effect. We also find this proposition should be denied.

Based upon the foregoing, the judgment and sentence is AFFIRMED.

LANE, V.P.J., and JOHNSON, J., concur.

PARKS, P.J., and BRETT, J., concur in part/dissent in part.

PARKS, Presiding Judge, concurring in part/dissenting in part:

I agree with the majority that appellant's conviction should be affirmed. However, I write separately because I disagree with much of the majority's analysis of appellant's second proposition of error.

For his second proposition, appellant contends that the trial court erred by refusing to give his requested theory of defense instruction. The majority is correct in stating that appellant failed to properly preserve this issue for review and such failure waives all but fundamental error. Because the instructions given fairly and accurately stated the applicable law, appellant's second proposition is rendered meritless without requiring further elaboration. However, the majority concludes that appellant would not have been entitled to any instruction on his theory of defense, attempts to distinguish this case from *Hutton*, and promulgates a new rule of law.

It is true that the issue of the trial court's failure to set forth and define the elements of the offense was discussed in *Hutton*. However, I disagree with the majority that such failure was the sole basis for reversal. This Court clearly and re-

peatedly stated in *Hutton* that a defendant, as a matter of law, is entitled to an instruction setting forth his theory of defense. On this basis, I believe that the majority's analysis begins with an erroneous interpretation of *Hutton.*

Moreover, I cannot agree with the majority's assertion that whenever a jury is instructed upon the elements of the offense charged, this Court may conclude, using a "totality of the instructions" standard, that the defendant is not entitled to an instruction on his theory of the defense. This redefinition of law is in conflict with long held, and virtually universal, law. *See Rounds v. State,* 679 P.2d 283, 288 (Okl.Cr. 1984) (a defendant is entitled to an affirmative instruction embracing his theory of defense). *See also State v. Settle,* 111 Ariz. 394, 531 P.2d 151 (1975); *People v. Worsham,* 26 Ill.App.3d 767, 326 N.E.2d 134 (1975); *Jones v. State,* 427 S.W.2d 616 (Tex.Crim.App.1968); *State v. Harris,* 313 S.W.2d 664 (Mo.1958); *People v. Sanchez,* 35 Cal.2d 522, 219 P.2d 9 (1950); *Duncan v. State,* 30 Ala.App. 356, 6 So.2d 450 (1942), *cert. denied* 242 Ala. 329, 6 So.2d 454 (1942). The majority's new rule is also contradictory to the widely accepted and long standing principle that necessity for instructions largely depends on the facts of each particular case. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *United States v. Pack,* 773 F.2d 261 (10th Cir.1985); *Root v. Commonwealth,* 299 Ky. 624, 186 S.W.2d 639 (1945). Furthermore, the rule fails to take into account the necessity for instructions that may be vital to proper consideration of particular cases. *See Root v. Commonwealth, supra; People v. Goldstein,* 146 Cal.App.2d 268, 303 P.2d 892 (1956).

The goal sought by the Legislature in enacting the statute authorizing the Oklahoma Uniform Jury Instructions, 12 O.S. 1981, § 577.1, and reflected by case law, appears to have been directed toward fairness and justice. *See also* 25 O.S.1981, § 29. In order to render a just verdict on the issues presented, a jury must be properly instructed. It is without question that at the heart of every criminal trial is whether the State has proven each and every element of the offense charged. However, the right of a defendant to an instruction on his theory of defense is not in competition with this requirement that is imposed upon the State. An appropriate defense instruction encourages the jury to focus on what may determine guilt or innocence, which is the desirable incident in a criminal trial.

It is not disputed that a defense instruction is required in cases where an affirmative defense is presented. However, similar instructions may be required by the facts of a particular case where a defense, if believed, would exonerate the defendant. This may arise in cases similar to the present case, where a defendant admits to all the elements of an offense, but denies one element such as knowledge. In such cases, a defendant should have a right to a properly phrased instruction on his theory, if the evidence supports it, regardless of whether the elements of the offense are also instructed upon. Contrary to the majority opinion, this is far different from a simple denial of the commission of the crime. It might be quite proper to deny instructions that simple disclaim any involvement in the crime charged, depending, of course, on the particular facts presented during trial.

On the basis of the foregoing, I respectfully dissent to that portion of the majority opinion which promulgates the new rule of law discussed above.